United States District Court
Southern District of Texas
**ENTERED**
March 11, 2026
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EDWARD B. LYON, JR., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. H-23-0800 |
| | § | |
| BRYAN COLLIER, *et al.,* | § | |
| | § | |
| *Defendants.* | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court in this *pro se* state prisoner civil lawsuit is defendants Bryan Collier and Lannette Linthicum's motion to dismiss (Docket Entry No. 37), to which plaintiff filed a response in opposition (Docket Entry No. 38).

Having considered the motion, the response, the record, matters of public record, and the applicable law, the Court **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss and **DISMISSES** this lawsuit for the reasons shown below.

**I.  BACKGROUND AND CLAIMS**

Proceeding *pro se* and *in forma pauperis*, plaintiff filed a civil lawsuit against Texas Department of Criminal Justice ("TDCJ") employees Bryan Collier, Lannette Linthicum, Joe Tovar, the Texas Board of Pardons and Paroles ("BPP"), Chairman Gutierrez, and the State Classification Committee ("SCC").  Plaintiff claimed that the defendants conspired against him to deny him craft shop privileges, to interfere with his consideration for parole, and to force his transfer to cool bed housing (fully or partially air conditioned housing).  He

contended that the actions were all in retaliation for short articles he wrote for two prison-related newsletters commencing in 2018, some of which focused on the TDCJ. Plaintiff argued that the defendants' actions violated his constitutional rights under 42 U.S.C. § 1983, the Texas Tort Claims Act, and the American Medical Association ("AMA") Patient Bill of Rights. He also challenged his conviction and life sentence for murder with a deadly weapon. Plaintiff sought injunctive relief and monetary damages.

Following initial screening of the lawsuit, the Court severed plaintiff's claims against Joe Tovar and transferred them to the Northern District of Texas,[1] and severed his claims against the BPP and Chairman Gutierrez and transferred them to the Western District of Texas.[2] The Court further dismissed plaintiff's official capacity claims against Collier and Linthicum, his claims against the SCC, his claims regarding the AMA Patient Bill of Rights, his challenges to his conviction, and his claims arising at the Gib Lewis, French Robertson, Ramsey, and Allred Units. The Court also dismissed his claims for injunctive relief seeking transfer to the Ramsey Unit with reinstatement of his craft shop privileges.

Plaintiff subsequently filed a more definite statement as to his remaining claims against Collier and Linthicum. Following its screening of the more definite statement, the

---

[1] The district court granted plaintiff's motion to dismiss the lawsuit on August 23, 2024. *Lyon v. Tovar*, C.A. No. 2:24-cv-121-Z-BR (N.D. Tex.).

[2] The district court dismissed the lawsuit for failure to state a claim and imposed a "strike" against plaintiff on August 1, 2024. *Lyon v. Chairman Gutierrez*, C.A. No. A-24-cv-00654-DII (W.D. Tex.). No appeal was taken.

Court dismissed plaintiff's retaliation claims against Linthicum and retained for further disposition his remaining individual and supervisory capacity claims against both defendants.

As his remaining claims against Collier, plaintiff asserts in his more definite statement that TDCJ promulgated and enforced an unconstitutional cool bed program for heat-sensitive inmates with the "knowledge, input, and approval" of Collier. He further claims that Collier instructed SCC members to levy "bogus" positive heat sensitivity scores against him in 2019, 2020, and 2021, resulting in his unwanted transfers to cool bed housing. As a result of the transfers, he was unable to continue the "thriving" craft shop business he had established at the Ramsey Unit. (Docket Entry No. 27, p. 1.) Plaintiff believes Collier took his newsletter articles "personally" and "is certain [Collier] ordered one or more SCC members to manipulate heat sensitivity scores that caused [plaintiff's] transfers[]" in retaliation for his newsletter articles. *Id.*, pp. 2, 3. Plaintiff argues that Collier's actions were clearly retaliatory because his diabetes and high blood pressure medications would not cause a positive heat sensitivity score and he had signed a "DNR" that declined all medical treatments. According to plaintiff, the retaliatory heat scores and unit transfers ceased in 2022 after he stopped writing articles about the prison system, which proved that his articles were the cause of his retaliatory transfers. Plaintiff also claims that Collier retaliated against him for his articles by providing input to the BPP that resulted in negative parole decisions.

3

As his remaining claims against Linthicum, plaintiff complains that she refused to accept telephone calls and a letter from his free world friend regarding plaintiff's heat score. He further claims that she failed to notice that he had another "bogus" positive heat score and failed to take steps to remove it on her own. He alleges that she exhibited personal involvement in the unlawful actions of others by not taking steps to permanently stop the pretextual heat scores and unit transfers.

In their pending motion to dismiss, defendants Collier and Linthicum move for dismissal of these claims. Plaintiff responds, in part, that his claims should not be dismissed until he has been provided an opportunity to undertake or complete discovery. Plaintiff has filed no motions for discovery or identified any proposed or necessary discovery, and his argument provides no basis for delaying disposition of the motion to dismiss.

Moreover, defendants have moved for dismissal predicated on the defense of qualified immunity, and are entitled to determination of the defense prior to discovery. *See Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021) ("[A] defendant's entitlement to qualified immunity should be determined at the earliest possible stage of the litigation."). Plaintiff has not requested any limited discovery for purposes of addressing defendants' qualified immunity defense. *See Carswell v. Camp*, 54 F.4th 307, 310 (5th Cir. 2022). To the contrary, plaintiff states in his response that he

> has stated a chronology of events, backed up by exhibits to his Original Complaint and this motion that proves all of the elements of his claims for reprisals and retaliation against him for his activities protected by the First Amendment to overcome [defendants'] assertions and immunity claims.

(Docket Entry No. 38, p. 4.) Thus, plaintiff's response shows that the motion to dismiss is ripe for disposition.

## II. LEGAL STANDARDS

### A.　FRCP 12(b)(6)

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"), a defendant may move to dismiss the plaintiff's claim for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Surviving a FRCP 12(b)(6) motion requires the plaintiff's pleading of "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible where the factual allegations "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a FRCP 12(b)(6) motion, the courts accept all well-pleaded facts as true and view them in favor of the party opposing the motion. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).

A complaint fails to state a claim upon which relief may be granted where it does not allege sufficient facts which, taken as true, state a claim which is plausible on its face and thus does not raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555. This standard requires more than the mere possibility that the defendant has acted unlawfully. *Id.* at 556. While all well-pleaded facts are taken as true, the courts do not accept as true

5

conclusory allegations, unwarranted factual inferences, or legal conclusions. *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Twombly* at 557. If the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, then the complaint has alleged—but has not shown —that the plaintiff is entitled to relief, and dismissal is appropriate.

B.    *Pro se* Pleadings

Pleadings filed *pro se* are held to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Courts have adopted the rule that a *pro se* plaintiff's pleadings are to be liberally construed. *Id.* Even though pleadings by a *pro se* litigant are held to a less stringent standard, courts must be able to draw a reasonable inference from the pleadings that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556. The complaint must allege sufficient facts which convince the Court that the plaintiff has at least a colorable claim, and conclusory allegations will not suffice. *See Mills v. Criminal Dist. Ct.*, 837 F.2d 677, 678 (5th Cir. 1988).

C.    Individual Capacity

Plaintiff sues Collier and Linthicum in their individual capacity. To state a § 1983 claim against a defendant in his or her individual capacity, a plaintiff must allege that the defendant was personally involved in the actions complained of or is responsible for the

policy or custom giving rise to the alleged constitutional deprivation. *Alderson v. Concordia Parish Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017) (holding that under § 1983, officials are not vicariously liable for conduct of those under their supervision; they are accountable for their own acts and for implementing unconstitutional policies that result in constitutional deprivations); *Jones v. Lowndes Cnty., Miss.*, 678 F.3d 344, 349 (5th Cir. 2012) (holding that a § 1983 claimant must establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation).

D.    Supervisory Capacity

Plaintiff also sues Collier and Linthicum in their supervisory capacity.  There is no vicarious or *respondeat superior* liability of supervisors under section 1983.  *Thompkins v. Belt*, 828 F.2d 298, 303–04 (5th Cir. 1987).  *See also Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011) (noting that the acts of subordinates do not trigger individual § 1983 liability for supervisory officials). A supervisory official such as Collier or Linthicum may be held liable under § 1983 only if the official affirmatively participated in the acts that caused a constitutional deprivation or implemented an unconstitutional policy that caused the deprivation. *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011).

E.    Retaliation

To state a claim for retaliation, a prisoner must allege (1) that he was exercising or attempting to exercise a specific constitutional right, (2) that the defendant intentionally retaliated against the prisoner for the exercise of that right, (3) that an adverse retaliatory

7

action, greater than de minimis, was undertaken against the prisoner by the defendant, and (4) that there was causation, *i.e.*, that but for the retaliatory motive, the adverse action would not have occurred. *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003); *Jones v. Greninger*, 188 F.3d 322, 324–25 (5th Cir. 1999). Claims of retaliation by prisoners are regarded with skepticism, lest the federal courts potentially embroil themselves in every adverse action that occurs within a state penal institution. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995).

A prisoner must allege more than a mere personal belief that he is the victim of retaliation. *Jones*, 188 F.3d at 325. Individual capacity claims such as the instant claims must be pleaded with factual detail and particularity, not mere conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1430 (5th Cir. 1995). The prisoner "must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may be plausibly inferred." *Woods*, 60 F.3d at 1166.

F.    Qualified Immunity

Qualified immunity shields government officials from civil liability "unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). Thus, to overcome a defense of qualified immunity, a plaintiff must show that the official violated a constitutional right that was clearly established at the time of the official's challenged conduct. *Bakutis v. Dean*, 129 F.4th 299, 303 (5th Cir. 2025).

Courts have historically conducted a two-pronged analysis to determine whether a defendant is entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Under the first prong, courts must determine whether a constitutional right would have been violated on the facts alleged. *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004). Under the second prong, courts must determine whether the defendant's actions violated clearly established constitutional rights of which a reasonable person would have known. *Id.* Courts are allowed to exercise their sound discretion in deciding which of the two prongs should be addressed first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

### III.  ANALYSIS

A.    Improper Venue

Defendants move to dismiss for improper venue plaintiff's claims that arose at the Clements Unit, which is located within the jurisdiction of the United States District Court for the Northern District of Texas, Amarillo Division. Plaintiff's complaint raised claims against defendant Joe Tovar that arose at the Clements Unit, and the Court severed and transferred those claims to the Amarillo Division on May 31, 2024. The Amarillo Division dismissed the claims on August 23, 2024.

Plaintiff acknowledges in his response that the Court severed and transferred the claims, such that defendants' argument is moot. He does not allege that any claims that arose at the Clements Unit remain pending in this lawsuit. Consequently, defendants' motion to dismiss plaintiff's claims arising at the Clements Unit is **DENIED AS MOOT**.

B.    Claims as to Cool Bed Housing

Plaintiff acknowledges, and public online court records show, that in 2017, TDCJ and class-action prisoners settled their disputes in *Cole v. Collier*, C.A. No. 4:14-CV-1698, 2017 WL 3049540 (S.D. Tex.). As part of the settlement, TDCJ contracted with an outside medical expert to create a method of determining which inmates most needed air-conditioned (cool bed) housing. *See Tiede v. Collier*, 796 F. Supp. 3d 275, 308 (W.D. Tex. Mar. 26, 2025). Pursuant to the resulting protocols, a "heat score" is generated using information from the inmate's electronic health record. *Id.* If an inmate has a heat score of one or above (a positive score), an inmate is assigned to cool bed housing. Heat scores are updated multiple times a day, and TDCJ reviews a report of changes in heat scores and a report of all inmates with heat scores, which are both generated every night. *Id.* Thus, all prisoners are evaluated on a continual basis as to heat scores, and the scores can change at any point based on various factors, including changes in health records.

Plaintiff argues in his response to the motion to dismiss that he was forced to undergo unwanted medical treatment for heat sensitivity through use of cool bed housing at the Gib Lewis Unit in Tyler County and the Allred Unit in Wichita County during 2021–2022. These allegations are separate from his retaliation claims against defendant Collier, *infra*.

The Allred Unit is located within the jurisdiction of the Northern District of Texas, Wichita Division, and the Gib Lewis Unit is located within the jurisdiction of the Eastern District of Texas, Lufkin Division. On June 14, 2024, the Court dismissed without prejudice

10

and for improper venue all of plaintiff's claims that arose at the Gib Lewis Unit and Allred Unit, including his claims for improper cool bed housing at those units. Consequently, plaintiff may not reassert the dismissed claims and they do not provide grounds for the denial of defendants' motion to dismiss.

C.    Plaintiff's DNR

Throughout his complaint and more definite statement, plaintiff alleges that his transfers to cool bed housing violated the Do Not Resuscitate ("DNR") form he signed in 2021 that declined all medical treatments, including cool bed housing. He attached a copy of his DNR to his response. (Docket Entry No. 38, pp. 10–12.) Plaintiff argues that because his DNR negated any justification for his transfers to cool bed housing, the transfers were clearly retaliatory.

Plaintiff misconstrues the purpose and effect of his DNR. Through his DNR, he declines as life-saving resuscitation measures any out-of-hospital cardiopulmonary resuscitation, transcutaneous cardiac pacing, defibrillation, advanced airway management, and artificial ventilation. *Id.*, p. 10. By its own terms, the purpose of the DNR is to "direct health care professionals to forgo resuscitation attempts and to permit the person to die a natural death with peace and dignity. This Order does NOT affect the provision of other emergency care, including comfort care." *Id.*, p. 11, original emphasis.

Contrary to plaintiff's arguments, the DNR does not act to decline or prohibit non-lifesaving, non-resuscitation medical measures, and did not act to prevent his transfer to cool

11

bed housing. Plaintiff's allegations against Collier and Linthicum arising from their alleged failure to comply with his DNR provide no factual or legal basis for a claim against Collier for retaliation or any claims against Collier and Linthicum for constitutional violations. No viable claim for relief under § 1983 is raised as to the DNR, and the DNR provides no basis for denial of the pending motion to dismiss.

Defendants are entitled to qualified immunity as to plaintiff's claims against them arising from his execution of the DNR. Defendants' motion to dismiss is **GRANTED** and plaintiff's claims predicated on his execution of the DNR are **DISMISSED WITH PREJUDICE** as barred by qualified immunity.

D.   Retaliation and Qualified Immunity as to Collier

Plaintiff contends that Collier retaliated against him for his newsletter articles that at times reported negatively about TDCJ. He asserts that Collier retaliated against him by reinstating pretextual heat scores, causing his transfers to cool bed housing or other units without craft shops, and imputing information to the parole board to negatively influence his parole decision at "secret meetings." (Docket Entry No. 27, p. 3.)

The Court ordered plaintiff to file a more definite statement of the facts supporting his retaliation claims against Collier. In response, plaintiff stated that because two wardens at plaintiff's facilities mentioned his articles, "I am certain Mr. Collier had read my articles about TDCJ's losing the heat lawsuit." (Docket Entry No. 27, p. 1.) Plaintiff further alleged that he "is certain Mr. Collier had one or more [state classification committee] members levy

heat sensitivity scores against him at various times in 2019, 2020, and 2021 to justify transferring him to" cool bed units and other units. *Id.* In response to the Court's order to state supporting factual allegations as to Collier's personal involvement in plaintiff's heat scores and unit transfers, plaintiff stated in his more definite statement that, "[I]f [I] were in Mr. Collier's shoes, [I] would have taken the articles [I] wrote about TDCJ's loss of the heat lawsuit extremely personally." *Id.*, p. 3.

Plaintiff's conclusory assertions of his personal beliefs do not support a viable claim for retaliation for purposes of FRCP 12(b)(6). *See Jones*, 188 F.3d at 324–25. Plaintiff's allegations do not produce direct evidence of motivation or allege a chronology of events from which retaliation may be plausibly inferred. *See Woods*, 60 F.3d at 1166. Plaintiff assumes that Collier read his newsletter articles and took them "extremely personally" because that is what plaintiff states he himself would have done. However, plaintiff's allegation as to what he himself would have done under the circumstances does not constitute factual support of a retaliatory motive as to the actions taken by Collier.

Moreover, plaintiff's conclusory allegations do not suffice to establish causation. Plaintiff acknowledges that his positive heat scores were generated by an algorithm based upon such factors as his medical conditions and medications, and that the heat score system was implemented for all prisoners as a result of class action litigation against TDCJ. Plaintiff's pleadings show that he began submitting newsletter articles in 2018, that the heat score system commenced in 2019, that he received his first positive heat score in December

13

2019, and that he was not transferred from the Ramsey Unit until 2021 when he received a second positive heat score. Plaintiff does not allege a chronology of events from which retaliation may be plausibly inferred by this Court.[3] *See Woods* at 1166. Moreover, because plaintiff's factual allegations establish that his 2021 transfer from the Ramsey Unit was due to a positive heat sensitivity score, his pleadings do not establish causation – that is, but for the retaliatory motive, the complained of incident would not have occurred. *McDonald v. Steward*, 132 F.3d 225, 2331 (5th Cir. 1998). *See, e.g., Streater v. Davis*, No. 21-11253 (5th Cir. Oct. 18, 2022) (per curiam) (dismissing prisoner's appeal as frivolous for insufficient factual allegations in the complaint to allow the court to draw the inference that he was transferred because of a pretextual heat related condition). Plaintiff's retaliation claims are premised on conclusory assertions and his personal belief that he was a victim of retaliation and no viable claim is raised for purposes of FRCP 12(b)(6).

Moreover, Collier is entitled to qualified immunity as to plaintiff's retaliation claims against him. Plaintiff claims that the adverse actions purportedly taken by Collier – pretextual heat scores and transfers to cold bed units – were in retaliation for plaintiff's newsletter articles. The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly

---

[3]Plaintiff alleges that his "bogus" transfers ceased in 2022 after he stopped writing newsletter articles. However, the Court notes that the online Prison Legal News publication shows that plaintiff published articles throughout 2023 and into 2024, including an article published on July 15, 2023, entitled "Texas Prisons are Fire Traps," which placed TDCJ in an unfavorable light. The article can be found at https://www.prisonlegalnews.org/news/2023/Jul/15/texas-prisons-are-fire-traps/ (last visited March 2, 2026).

established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Here, the Court must determine whether plaintiff has alleged the violation of a clearly established constitutional right and, if so, whether the defendant's conduct was objectively reasonable. *See Rankin v. Klevenhagen*, 5 F.3d 103 (5th Cir. 1993). Plaintiff pleads no factual allegations establishing that, at the time of the purported retaliatory heat scores and transfers, he enjoyed a constitutional right to not receive a positive heat score or be transferred to a cold bed unit. To the contrary, it is well established that prisoners have no constitutional right to be incarcerated in the prison unit or facility of their choice. *Thomas v. Pearson*, 342 F. App'x 21, 22 (5th Cir. 2009). A prisoner has no constitutionally protected interest in placement in a particular facility. *Tighe v. Wall*, 100 F.3d 41, 42 (5th Cir. 1996). Nor may plaintiff claim a constitutional right to access a prison craft shop, as he admits that use of the craft shop was a privilege, not a right. Plaintiff acknowledges that he disputed the cold bed housing and was subsequently removed from cold bed housing, but he complains that he was not then returned to the Ramsey Unit or transferred to a unit with a craft shop. This latter complaint raises no viable claim for relief, as he had no constitutional right to be returned to the Ramsey Unit or be sent to a unit with a craft shop.

Defendant Collier is entitled to qualified immunity as to plaintiff's retaliation claims against him. Defendants' motion to dismiss is **GRANTED** and plaintiff's retaliation claims against Collier are **DISMISSED WITH PREJUDICE** as barred by qualified immunity.

15

E.     Remaining Claims Against Defendant Collier

It is unclear whether plaintiff contends that Collier conspired with any other defendants as to the alleged violations of his constitutional rights. "To establish a conspiracy claim under § 1983, the plaintiff must show that there was an agreement among the alleged co-conspirators to deprive him of his constitutional rights and that such an alleged deprivation actually occurred." *Montgomery v. Walton*, 759 F. App'x 312, 314 (5th Cir. 2019). "Conclusory allegations that do not reference specific factual allegations tending to show an agreement do not suffice to state a civil rights conspiracy claim under $ 1983." *Id.* Plaintiff's allegations of conspiracy in his pleadings are conclusory and based on his personal opinions, not specific factual allegations, and are insufficient to raise a viable claim for conspiracy as to Collier.

Plaintiff additionally claims that Collier violated his well established constitutional right to refuse medical treatment. However, plaintiff does not establish that, at the time of Collier's relevant conduct, plaintiff had a clearly established constitutional right not to be assigned to a cold bed unit following a positive heat score. Although plaintiff also claims that he had a constitutional right to decline assignment to a cold bed unit because it was unwanted medical treatment, he does not establish that, at the relevant times, cold bed housing was recognized by legal authority as medical treatment. Even so, plaintiff's pleadings show that he rejected his assignment to a cold bed unit and was reassigned to non-cold bed housing. No violation of an established constitutional right is shown.

16

Moreover, plaintiff fails to plead specific factual allegations sufficient to give rise to a viable claim against Collier in his supervisory capacity, and the claims must be dismissed for failure to state a claim upon which relief may be granted.

Plaintiff's claims against Collier are **DISMISSED WITH PREJUDICE** as barred by qualified immunity.

F.     Claims Against Defendant Linthicum

Plaintiff alleges that defendant Linthicum violated his constitutional rights by refusing to accept telephone calls and a letter from his free world friend regarding plaintiff's heat score. He further claims that she failed to notice that he had another pretextual positive heat score and failed to take steps to remove it on her own. He alleges that she exhibited personal involvement in the unlawful actions of others by taking no steps to permanently stop pretextual heat scores and unit transfers.

Plaintiff fails to plead facts sufficient to raise a viable claim against Linthicum for violation of his constitutional rights in either her individual capacity or supervisory capacity. He does not establish that, at the time of the occurrences, Linthicum was constitutionally obligated under established authority to accept telephone calls or letters from plaintiff's friends. Nor does he plead sufficient factual allegations establishing that Linthicum implemented an unconstitutional policy that caused a deprivation of his constitutional rights.

Defendant Linthicum is entitled to qualified immunity as to plaintiff's claims against her arising from her refusal to accept telephone calls or a certified letter from plaintiff's

friend. Defendants' motion to dismiss is **GRANTED** and plaintiff's claims against Linthicum are **DISMISSED WITH PREJUDICE** as barred by qualified immunity.

## IV. STATE LAW CLAIMS

Plaintiff's pleadings raise state law claims over which the Court may exercise supplemental or pendent jurisdiction under 28 U.S.C. § 1367.

Under § 1367, "a federal court has subject matter jurisdiction over specified state law claims, which it may (or may not) choose to exercise." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). Under § 1367(c)(3), the "district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction."

The general rule in this circuit "is that a court should decline to exercise jurisdiction over remaining state law claims when all federal law claims are eliminated before trial." *Brookshire Bros. Holding, Inc. v. Dayco Prod. Inc.*, 554 F.3d 595, 602 (5th Cir. 2009). In this instance, the Court has dismissed all claims over which it has original jurisdiction, and it declines to exercise jurisdiction over plaintiff's state law claims. *See Bradley v. Sheriff's Dep't St. Landry Par.*, 958 F.3d 387, 396 (5th Cir. 2020).

For these reasons, plaintiff's state law claims are **DISMISSED WITHOUT PREJUDICE** to being raised in state court.

## V.   CONCLUSION

For the reasons shown above, the Court **ORDERS** as follows.

1. Defendants Bryan Collier and Lynette Linthicum's motion to dismiss (Docket Entry No. 37) is **GRANTED IN PART** and **DENIED IN PART AS MOOT**.

2. Defendants Bryan Collier and Lynette Linthicum's motion to dismiss plaintiff's claims arising at the Clements Unit is **DENIED AS MOOT**, as the claims were dismissed by earlier order.

3. Plaintiff's state law claims against defendants Bryan Collier and Lynette Linthicum are **DISMISSED WITHOUT PREJUDICE**.

4. Defendants Bryan Collier and Lynette Linthicum's motion to dismiss the remainder of plaintiff's claims against them is **GRANTED** and the claims are **DISMISSED WITH PREJUDICE**.

5. Any and all other pending motions are **DISMISSED AS MOOT**.

Signed at Houston, Texas, on this the ___7___ day of March, 2026.


_____

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE